1:19mj3196

# AFFIDAVIT

I, John D. Aske, being duly sworn, do hereby state as follows:

## I.   INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over 21 years.  I am currently assigned to the Cleveland Division of the FBI and its Complex Financial Crimes Squad. I am currently assigned to work a variety of federal criminal matters, including complex financial fraud, identity theft, money laundering, and other violations of Federal law. During the course of my career as a FBI Special Agent, I have conducted numerous federal criminal investigations involving complex financial crimes. I have conducted or participated in surveillance, the execution of search warrants, debriefings of cooperating witnesses, interrogation of subjects, review of complex documents and recorded conversations.  Through my education, training, and experience, I have become familiar with a variety of complex financial crime schemes, the methods used to entice victims of such schemes, and the methods that are used to conceal the profits from such schemes.

2. As a Special Agent of the FBI, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of criminal laws of the United States, and thereby authorized to request the issuance of federal criminal complaints. I make this affidavit in support of an application for a federal criminal complaint, charging HOWARD H. ZHAO with a scheme to defraud in violation of Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1028A (a)(1)  (Aggravated Identity Theft).

3. The information contained in this affidavit is based upon, among other things, my personal knowledge and involvement in the investigation, information obtained by other agents and investigators, information provided by witnesses, public information, and my training and experience. The affidavit is submitted for the limited purposes described above. Accordingly, it does not include all the information obtained in regard to this investigation, but rather contains only the information necessary to establish probable cause for the requested issuance of a federal criminal complaint.

II.     **GOVERNING LAW**

4. Title 18, United States Code, Section 1343 (Wire Fraud) makes it a federal offense for whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

5. Title 18, United States Code, Section 1028A (a) (1) (Aggravated Identity Theft) makes it a federal offense for whoever, during and in relation to a wire fraud knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall in addition to the punishment provided for wire fraud, be sentenced to a term of imprisonment of 2 years.

III.    **INVESTIGATION BACKGROUND**

6. Since on or about  November 2018, Special Agents of the FBI, including myself, have been conducting an investigation into HOWARD H. ZHAO ("ZHAO")  regarding, among

other things, apparent violations of Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1028A (a)(1) (Aggravated Identity Theft) by ZHAO. The evidence adduced to date establishes probable cause that, beginning on or about December 2016 through the present, ZHAO engaged in a scheme or artifice to defraud and to obtain money or property from an individual, referred to herein as XW, of Shanghai, China, by convincing XW and his spouse to send ZHAO approximately USD $150,000 to obtain a United States Visa based on materially false and fraudulent pretenses, representations, and promises. Those materially false and fraudulent pretenses, representations, and promises included ZHAO overstating his ability to obtain a United States Visa, his relationship with an immigration attorney in the United States, and utilizing the identities of XW and the immigration attorney, to defraud XW and his spouse in the amount of approximately USD $150,000.

**IV.**     **CHRONOLOGICAL TIMELINE OF COMMUNICATIONS FROM ZHAO**

7. The following is a chronological timeline of numerous material misrepresentations made by ZHAO to XW and XW's spouse, relating to ZHAO's ability to obtain XW a United States Visa. The misrepresentations were made by ZHAO utilizing the WeChat texting application, or verbally. The misrepresentations were documented through the WeChat text application (in writing) or consensually recorded conversations (verbally) by XW, or XW's spouse.

8. On or about December 26, 2016, ZHAO represented to XW that ZHAO could obtain a United States Visa for XW and XW's spouse, if they invested USD $150,000 into one of ZHAO's three businesses. ZHAO further represented to XW that his investment in ZHAO's business would be returned to XW after three years but the investment would have to remain in place for two years since XW would be on conditional green card status.

9. On or about December 30, 2016, ZHAO informed XW that the USD $150,000 investment could be paid in three installments and ZHAO would record the amounts in the financial records of the business. ZHAO also represented to XW that the United States Visa application would be completed by the summer (2017).

10. On or about January 6, 2017, ZHAO represented to XW that Richard Herman, a famous lawyer in Ohio with whom ZHAO has a good relationship would handle the United States Visa process for XW. ZHAO further represented to XW that Herman would accompany XW to his Visa interview in Guangzhou, China. However, an interview of Richard T. Herman, Esq. determined that ZHAO mispresented to XW that Attorney Herman would handle the United States Visa process for XW. Herman advised he was an attorney in Ohio and had previously represented ZHAO in an immigration deportation case approximately 10-15 years and when ZHAO applied for his United States citizenship approximately 5 years ago. However, Attorney Herman advised he was never contacted by ZHAO to legally represent XW in an attempt to obtain a United States Visa.

11. On or about 01/16/2017, 01/26/2017, and 02/07/2017, XW wire transferred the following amounts to ZHAO for the processing of the United States Visa:

| **Date** | **CNY Amount** | **USD Amount** | **XW Bank Account** | **ZHAO Bank Account** |
|---|---|---|---|---|
| 01/16/2017 | CNY345,000 | USD49,990.50 | 622908211563632519 Industrial Bank- Shanghai, China | 6217850200001088443 Bank of China- Tianjin City, China |
| 01/26/2017 | CNY343,980 | USD49,980.30 | 622908211563632519 Industrial Bank- Shanghai, China | 6217850200001088443 Bank of China- Tianjin City, China |
| 02/07/2017 | CNY171,500 | USD24,901.80 | 622908211563632519 Industrial Bank- Shanghai, China | 6217850200001088443 Bank of China- Tianjin City, China |

12. On or about March 27, 2017, ZHAO informed XW he spoke with the lawyer (Herman) and his interview was scheduled for the week of April 16th (2017). On or about September 28, 2017, ZHAO informed XW that the interview notice will be issued mid-October (2017) and the preferred interview date is the week of November 20th (2017). ZHAO further represented to XW that the lawyer (Herman) would contact XW and arrange trip date. This investigation has revealed that these representations were false, and that attorney Richard J. Herman was a fictional individual devised by ZHAO to perpetuate his fraud against XW.

13. On or about October 16, 2017, ZHAO informed XW that the Visa interview was scheduled for 12/19/2017 and XW had to transfer CNY $150,000 (approximately USD $22,575.00) for a security deposit for the Visa interview. However, no such deposit is required to secure a visa interview. ZHAO represented to XW that the security deposit would be returned after the 12/19/2017 interview. ZHAO also represented to XW that the original investment in ZHAO's business would be returned one month after the United States Visa was issued.

14. On October 23, 2017, ZHAO represented to XW that the lawyer (Herman) received the official visa interview notice but the exact date would depend on the submission of Form I-797c. ZHAO attached the form to the message he sent to XW. On October 25, 2017, ZHAO represented to XW the interview was December 20th (2017) but if XW wanted to transfer the CNY $150,000 000 (approximately USD $22,575.00) right now, ZHAO would try and make the interview happen two weeks earlier. This investigation has revealed that no such interview was ever scheduled, nor did ZHAO have the ability to set or expedite the scheduling of any visa interview for XW.

15. On October 30, 2017, XW wire transferred CNY $150,000 000 (approximately USD $22,575.00) from his bank account number 440373338749, Bank of China-Shanghai, China to ZHAO's bank account number 271360939066, Bank of China-Tianjin City, China.

ZHAO confirmed receipt of the payment and informed XW he forwarded the funds to the lawyer (Herman) and it was applied to the interview application process (for United States Visa).

16. From or about November 1, 2017 through March 2018, ZHAO made numerous representations to XW regarding the delay of XW's Visa interview and the location of the funds XW provided to ZHAO. ZHAO made the following representations to XW:

   a. ZHAO represented to XW that the interview process was delayed due to new Chinese government policies, when in fact there were no change in the Chinese government's policies for obtaining a Visa.

   b. ZHAO represented to XW that the lawyer (Herman) recommended that XW change the interview process from Guangzhou, China to the United States and already submitted the application for interview in the United States, when in fact ZHAO never hired Attorney Herman to represent XW in the Visa process, and Attorney Herman never submitted any visa applications for XW.

   c. ZHAO represented to XW that the funds he sent were in registered capital in ZHAO's United States registered company account and the security deposit was with the consulate. ZHAO also represented to XW that the funds could not be moved in any situation otherwise the Visa application would fail.

17. On or about March 22, 2018, ZHAO informed XW his Visa interview has been scheduled for the Nebraska headquarters (in the United States) but the lawyer (Herman) needed XW's Electronic Visa Update System ("EVUS') information to prepare the documents for the interview. XW sent ZHAO, via e-mail, the EVUS information.

18. On or about April 4, 2018, ZHAO represented to XW that United States Immigration forwarded the interview from the Nebraska office to the Cleveland office and it was currently scheduled for April 19th (2018). ZHAO again requested that XW send his EVUS

information so the lawyer (Herman) could verify the information. XW sent Zhao, via e-mail, the EVUS information.

19. EVUS is the online system operated by the United States Customs and Border Protection and used by nationals of the People's Republic of China holding a 10 year B1 or B2 Visa to periodically update basic biographical information to facilitate travel to the United States. In order to travel to the United States, nationals of the People's Republic of China are required to complete an EVUS enrollment and hold a valid visa to be admitted to the United States. Each EVUS enrollment requires a traveler to provide name, date of birth, emergency contact, biographical and employment information. Travelers will also be required to answer questions relating to travel eligibility. Notably, Question 6 of the EVUS applications asks "[a]re you currently seeking employment in the United States, or were you previously employed in the United States without prior permission from the U.S. Government[.]" If an applicant answers "yes" to Question 6 his visa will usually be denied or, if a valid visa is already issued, his visa will be revoked.

20. XW had a valid visa issued on or about February 7, 2017. The visa was not set to expire until on or about February 7, 2019.

21. However, on or about April 7, 2018, XW received an e-mail from an individual purporting to be Attorney Richard Herman and utilizing e-mail address richardj.herman@outlook.com. The e-mail informed XW that he has failed to provide accurate information and the funding (he originally sent to ZHAO for the business investment) was associated with overseas sources which resulted in his Visa application being rejected by ICE. The-e-mail further informed XW that providing false information was a serious perjury offense.

22. On or about April 11, 2018, XW informed ZHAO that his Visa to travel to the United States for the interview has been revoked. XW again asked ZHAO about the location of

the funds he provided to ZHAO. ZHAO represented to XW the funds were in ZHAO's business account but controlled by United States immigration.

23. On or about April 15, 2018, XW received an e-mail from an individual purporting to be Attorney Richard Herman and utilizing e-mail address richardj.herman@outlook.com. The e-mail apologized to XW for the unpleasant experience he encountered (with the Visa process). The e-mail further represented to XW that ZHAO was a great friend of the lawyer and he would bring the matter to a favorable solution as soon as possible.

24. On or about June 21, 2018, XW informed ZHAO that XW's Visa was cancelled in EVUS due to a "yes" answer to Question 6 and that an unknown individual filed a new application in EVUS on April 9, 2018 which caused the Visa cancellation. ZHAO represented to XW that the lawyer (Herman) did not file a new application and it had nothing to do with the lawyer or United States Immigration. As detailed below, however, ZHAO was the individual who submitted an updated EVUS application using XW's personal identifiers with a "yes" answer to Question 6, which caused XW's visa to be revoked.

25. A review of the Electronic Visa Update System application (EVUS) by FBI-TFO Douglas Prenger, a United States Custom and Border Patrol Protection Officer, disclosed XM's EVUS account was accessed from IP Address 75.40.84.207 belonging to AT&T U-Verse located in Strongsville, Ohio on April 9, 2018. The EVUS account was accessed for the purpose of submitting a new Visa application which was rejected as a result of Question 6 being answered "yes". Prenger advised that his review of XW's account determined that on all previous EVUS applications for XW Question 6 was answered "no". Prenger further advised that all other logins to XW's account originated from IP addresses located in China and corresponded to the "no" answer to Question 6 while the IP address originating from Strongsville, Ohio was the only address which corresponded with the 'yes' answer for Question 6.

26. A review of subscriber information provided by AT&T U-Verse disclosed that IP Address 75.40.84.207 is associated with an account belonging to HOWARD H. ZHAO located at 19668 Ellsworth Drive, Strongsville, Ohio 44149 and was active during the time XW's EVUS account was accessed on 04/09/2017.

27. The fraudulent information submitted by ZHAO through XW's EVUS account was transmitted from the Northern District of Ohio (origination point of ZHAO's IP address) to the Eastern District of Virginia (location of EVUS servers) for the purpose of preventing XW from traveling to the United States and discovering the fraud perpetrated on him by ZHAO.

28. On or about June 27, 2018, XW informed ZHAO he decided to cancel his Visa application and asked ZHAO when he could wire transfer the funds back to him. ZHAO informed XW he would check with the lawyer (Herman) and let him know the exact date the funds would be returned. XW has not received any funds back from ZHAO as a result of the cancelled Visa application.

29. On or about June 29, 2018, XW received an e-mail from an individual purporting to be Attorney Richard Herman and utilizing e-mail address richardj.herman@outlook.com. The e-mail informed XW that there could be unforeseen consequences for withdrawing his Visa Application and his firm would not be able to represent him if consequences occurred. The e-mail further informed XW his funds were not refundable.

30. On or about June 30, 2018, XW received an e-mail from an individual purporting to be Attorney Richard Herman and utilizing e-mail address richardj.herman@outlook.com. The e-mail informed XW that the lawyer (Herman) would review and prepare all documents over the weekend for a speedy motion to withdraw (XW's Visa application).

31. Interview of Richard T. Herman, Esq. disclosed that Herman previously represented ZHAO in an immigration deportation case approximately 10-15 years ago and when

9

ZHAO applied for his United States citizenship approximately 5 years ago. However, Attorney Herman advised that he was never contacted by ZHAO to legally represent XW in an attempt to obtain a United States Visa. Attorney Herman only learned of XW's existence when XW contacted him and they realized that an individual was utilizing an e-mail address similar to Attorney Herman's to correspond with XW.

32. After reviewing e-mails sent to XW from e-mail account richardj.herman@outlook.com, referred to in paragraphs 21, 23.29, 30 above, Attorney Herman advised he did not have an account in that name and that his middle initial was "T" not "J". Herman further stated he never represented XW in any Visa application and never sent any documents to XW.

33. Attorney Herman further advised that he never received any funds referred to in paragraphs 11 and 15 above, from ZHAO to legally represent XW in obtaining a United States Visa.

## V. CONCLUSION

34. Based upon the totality of the facts and circumstances set forth herein, and based upon my training and experience, there is probable cause to believe, and I do believe, HOWARD H. ZHAO engaged in a scheme or artifice to defraud in violation of Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1028A (a) (1) (Aggravated Identity Theft). Accordingly, I respectfully request that the Court issue a Federal Criminal Complaint authorizing the arrest of HOWARD H. ZHAO.

35. As a result of ZHAO's scheme to defraud, Victim XW suffered a loss of approximately USD $150,000.

## VI. REQUEST TO SEAL THIS AFFIDAVIT

36. Finally, in my judgement and based on my training and experience, as well as conversations with other law enforcement agents, it is my belief that the disclosure of this affidavit, at this time, will jeopardize the governments ongoing investigation, and ability to arrest HOWARD H. ZHAO in the Northern District of Ohio and elsewhere. Accordingly, it is requested that this affidavit and arrest warrant be sealed until further order of the Court.

SPECIAL AGENT JOHN D. ASKE
FEDERAL BUREAU OF INVESTIGATION

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)

Thomas M. Parker
United States Magistrate Judge
1:26 PM, Jul 24, 2019