

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | 1:19 CR 639 |
| | ) | |
| v. | ) | CASE NO._____ |
| | ) | Title 18, United States Code, |
| HOWARD H. ZHAO, | ) | Section 1343 |
| | ) | |
| Defendant. | ) | JUDGE OLIVER |

GENERAL ALLEGATIONS

At all times material to this Information:

A.  **Background**

    1.    Defendant HOWARD H. ZHAO ("ZHAO") resided in the Northern District of Ohio.

    2.    X.W. was a Chinese citizen and resided in Shanghai, China.

    3.    I.W. was X.W.'s spouse.  I.W. was also a Chinese citizen and resided in Shanghai, China.

    4.    The United States Dollar ("USD") is the official currency of the United States.

    5.    The Chinese Yuan Renminbi ("CYN") is the official currency of the People's Republic of China.

    6.    Electronic Visa Update System "EVUS" is the online system operated by the United States Customs and Border Protection and used by nationals of the People's Republic of China holding a 10-year B1 or B2 Visa to periodically update basic biographical information to

facilitate travel to the United States. In order to travel to the United States, nationals of the People's Republic of China are required to complete an EVUS enrollment and hold a valid visa to be admitted to the United States.  Each EVUS enrollment requires a traveler to provide name, date of birth, emergency contact, biographical and employment information. Travelers will also be required to answer questions relating to travel eligibility.  Notably, Question 6 of the EVUS applications asks "[a]re you currently seeking employment in the United States, or were you previously employed in the United States without prior permission from the U.S. Government[.]" If an applicant answers "yes" to Question 6 his visa will usually be denied or, if a valid visa is already issued, his visa will be revoked.

7.      XW had a valid visa issued on or about February 7, 2017.  The visa was not set to expire until on or about February 7, 2019.

**B.      The Scheme**

8.      On or about December 26, 2016, ZHAO represented to X.W. that ZHAO could obtain a United States Visa for X.W. and X.W.'s spouse, I.W., if they invested $150,000 USD into one of ZHAO's three businesses.  ZHAO represented to X.W. that the investment into his business would be returned at the end of three years, but had to remain in the business for two years because X.W. would be in the United States on conditional green card status.

9.      On or about December 30, 2016, ZHAO informed X.W. that the $150,000 USD investment could be paid in three installments and ZHAO would record the amounts in the financial records of the business. ZHAO also represented to X.W. that the United States Visa application would be completed by the summer of 2017.

10.      On or about January 6, 2017, ZHAO represented to X.W. that "Richard Herman", a famous lawyer in Ohio with whom ZHAO had a good relationship, would handle the United

States Visa process for X.W.  ZHAO further represented to X.W. that Herman would accompany X.W. to his visa interview in Guangzhou, China.

11.     On or about January 16, 2017, X.W. transferred 345,000 CYN (approximately $49,990.50 USD) from his personal bank account to ZHAO's personal bank account.

12.     On or about January 26, 2017, X.W. transferred 343,980 CYN (approximately $49,980.30 USD) from his personal bank account to ZHAO's personal bank account .

13.     On or about February 7, 2017, X.W. transferred 171,500 CYN (approximately $24, 901.80 USD) from his personal bank account to ZHAO's personal bank account.

14.     On or about March 27, 2017, ZHAO told X.W. that he spoke to the lawyer and X.W.'s visa application interview was scheduled for the week of April 16, 2017.

15.     On or about September 28, 2017, ZHAO told X.W. that his interview notice would be issued in mid-October 2017 and the preferred date is the week of November 20, 2017. ZHAO also told X.W. that the lawyer would follow up with him to arrange the date of his trip to Cleveland for his interview.

16.     On or about October 16, 2017, ZHAO told X.W. that his interview date was scheduled for December 19, 2017 and that he needed to send a security deposit in the amount of 120,000 - 150,000 CYN (approximately $22,575 USD) for the interview.  ZHAO further told X.W. that the security deposit would be returned after the December 19, 2017 interview.

17.     On that same date, X.W. asked ZHAO when his original $125,000 USD investment in ZHAO's business would be returned.  ZHAO represented that the original investment  in ZHAO's business would be returned to X.W. one month after his visa was issued. ZHAO also told X.W. that the lawyer would travel to China to assist X.W.

18.     On or about October 23, 2017, ZHAO told X.W. that his lawyer had received the official interview notice and that the exact date of X.W's interview would depend on his submission of a Form I-797c, which ZHAO provided.

19.     On or about October 25, 2017, ZHAO told X.W. that his visa application interview was scheduled for December 20, 2017, but if X.W. paid the security deposit right away ZHAO would try to arrange the interview for two weeks earlier.

20.     On or about October 26, 2017, X.W. told ZHAO that he could provide 150,000 CYN for the security deposit as soon as October 28, 2017. X.W. also told ZHAO to give him two days' notice before the security deposit needed to be transferred because he was using a bank short-term loan service to obtain the funds. ZHAO responded telling X.W. that he would see the lawyer the next day and that he would make sure the lawyer submitted the application as soon as possible.  ZHAO also provided X.W. with his bank account information for the transfer of the security deposit.

21.     On or about October 30, 2017, X.W. transferred 150,000 CYN (approximately $22,575 USD) from his personal bank account to ZHAO's personal bank account.

22.     On that same date, ZHAO confirmed receipt of the money and told X.W. that he forwarded the money to the lawyer and that the lawyer submitted X.W.'s application for the interview process.

23.     On or about November 14, 2017, X.W. asked ZHAO whether the process went well. ZHAO represented to X.W. that all of his visa application documents had been accepted and that he would check to see if there were any updates on the status of his application.

24.     On November 27, 2017, ZHAO told X.W. that he had a telephone call with the lawyer and the Guangzhou office would have an update on Tuesday.  Additionally, ZHAO told X.W. that his visa application interview was still scheduled for December 20, 2017.

25.     On or about November 29, 2017, ZHAO told X.W. that the lawyer informed him that everything was normal, but there was a new process that required the interview notice to be filed by the official Chinese authorities. ZHAO further represented that X.W's interview was still scheduled for December 20, 1017.

26.     On or about December 5, 2017, ZHAO told X.W. that his security deposit for the interview would be released right after the interview.

27.     On December 12, 2017, X.W. told ZHAO he still had not received the interview notification letter.  ZHAO told X.W. that he would visit the lawyer the next day and that the consulate indicated that the interview notice had been sent to the Chinese filing authorities.

28.     X.W. did not have a visa application interview on December 20, 2017.

29.     On or about December 28, 2017, ZHAO told X.W. that the lawyer was making his case a top priority and understood his frustration. ZHAO made numerous misrepresentations to X.W. regarding why his visa application process was delayed.

30.     On or about January 3, 2018, ZHAO told X.W. that his interview in Guangzhou, China was delayed due to new Chinese government policies. ZHAO also told X.W. that the lawyer suggested that X.W. change his interview location to the United States because the lawyer would have more control of the process.

31.     On that same date, X.W. asked ZHAO where his money was.  ZHAO told X.W. that his $125,000 investment was in the United States in the U.S. registered capital company account and that his $150,000 CYN security deposit was with the consulate.

32.     On January 10, 2018, ZHAO represented to X.W. that he spoke to the lawyer that day and the Guangzhou, China office would do their best to follow-up on his application that week.  ZHAO also told X.W. that the investment funds X.W. transferred to ZHAO on October 30, 2017, could not be removed from their current location because if the investment were moved the visa application would fail.

33.     On January 17, 2018, ZHAO told X.W. that he and the lawyer had been friends for years and he only charges $7,500, which is half the cost of regular immigration attorneys. ZHAO further represented to X.W. that he would help him pay his attorney's fees.

34.     On January 23, 2018, ZHAO represented to X.W. that the lawyer had already submitted the application for an interview in the United States, but due to budget issues the United States government agencies are closed and the post office was not transporting mail.

35.     On February 24, 2018, X.W. asked ZHAO if he had any updates on his application and interview.

36.     On March 22, 2018, ZHAO informed X.W. that his interview was scheduled at the Nebraska headquarters and the lawyer needed X.W.'s EVUS  information to prepare a document for the interview.  ZHAO also told X.W. that his interview would be mid-April.

37.     On that same date, X.W. sent ZHAO his EVUS information to ZHAO's email account.  ZHAO acknowledged receipt of the information.

38.     On April 3, 2018, X.W. asked ZHAO if his interview time was scheduled.  ZHAO told X.W. that the lawyer went to the Immigration Bureau to run a number of applications, including X.W.'s application and that he would contact ZHAO later that afternoon.

39.     On April 4, 2018, ZHAO told X.W. that Immigration had forwarded the interview from the Nebraska office to the Cleveland office and that his interview was scheduled for April

19, 2018.  Additionally, ZHAO told X.W. to send the EVUS information again so the lawyer could verify and confirm the information.

40.     On that same date, X.W. sent ZHAO his EVUS information to ZHAO's email account.

41.     On or about April 7, 2018, ZHAO sent an email to X.W. purporting to be Attorney Richard Herman and utilizing email address richardj.herman@outlook.com. The email informed X.W. that he had failed to provide accurate information and the funding he originally sent to ZHAO for the business investment was associated with overseas sources, which resulted in his application being rejected by ICE. The email further threatened X.W. that providing false information was a serious perjury offense.

42.     On or about April 9, 2018, ZHAO accessed X.W.'s EVUS account and submitted a new visa application wherein he answered "yes" to Question 6.

43.     On or about April 10, 2018, ZHAO told X.W. that the interview was confirmed for April 19, 2018 from 2:00 p.m. to 4:00 p.m.  ZHAO offered to pay for X.W.'s airline ticket to the United States for the interview.

44.     On or about April 11, 2018, ZHAO and X.W. discussed X.W.'s April 19, 2018, interview and X.W. told ZHAO he was concerned because his visa, which was necessary to travel the United States for the interview, was revoked. X.W. also asked ZHAO about the location of the funds he provided for his investment in ZHAO's business.  ZHAO responded that the funds were in the company's bank account, but controlled by United States Immigration and discussed with X.W. how he could get his money back.

45.     On or about April 15, 2018, ZHAO sent an email to X.W. purporting to be Attorney Richard Herman and utilizing email address richardj.herman@outlook.com. The email

apologized to X.W. for his unpleasant experience with the visa process. The email also informed X.W. that ZHAO was a friend of Herman and that Herman had submitted documents to the Guangzhou, China office to seek a speedy resolution of visa application.

46.    On or about April 21, 2018, ZHAO sent an email to X.W. purporting to be Attorney Richard Herman and utilizing email address richardj.herman@outlook.com. The email informed X.W. that Herman would draft an email to X.W. to make sure X.W. was prepared for his interview the next week and provide a few points to emphasize in the interview.

47.    On or about April 27, 2018, X.W. urgently contacted ZHAO to tell that he had borrowed the money for the investment from family and friends and asked if the money he provided for the investment could be returned. ZHAO stated that he would discuss the issue with the lawyer and figure out a way to offer X.W. some financial assistance.

48.    On that same date, ZHAO provided X.W. with numerous excuses regarding the reason his visa application had not been approved. ZHAO also told X.W. that his investment money was in his bank account and could be returned immediately if his visa application was denied.

49.    On June 21, 2018, X.W. told ZHAO that X.W.'s visa was cancelled in EVUS due to a "yes" answer in response to question 6. X.W. also told ZHAO that someone filed a new application in EVUS on April 9, 2018, and that the application caused the cancellation of his visa. ZHAO told X.W. that the lawyer did not file a new application and that the new application had nothing to do with United States Immigration or the lawyer. ZHAO told X.W. that the new application was caused by an internal computer error.

50.     On June 26, 2018, XW asked ZHAO if his money could be returned if he elected to quit the visa process. ZHAO told X.W. that the money would definitely be returned if he quit the visa process.

51.     On or about June 27, 2018, ZHAO told X.W. that he spoke with the lawyer and the lawyer said all of the information had be updated due to the new EVUS application and that X.W. may have to start the application process all over again.

52.     On that same date, ZHAO told X.W. that his money would be returned within a week if X.W. decided to close the visa application process.  ZHAO told X.W. that his money was in ZHAO's personal account.

53.     On that same date, X.W. told ZHAO that he decided to cancel the visa application and asked ZHAO when he would wire his money back to him.  ZHAO told X.W. that he would check with the lawyer, but that it would take a week. ZHAO further told X.W. that he would provide him with an exact date that he would receive his money back after he talked to the lawyer.

54.     On or about June 29, 2018, ZHAO sent an email to X.W. purporting to be Attorney Richard Herman and utilizing email address richardj.herman@outlook.com. The email informed X.W. that there could be unforeseen sub-consequences for withdrawing his visa application and that he and his firm would not be able to represent X.W. if those consequences occurred.  The email further informed X.W. that withdrawing his visa application without a proper reason was not advisable and that his current fees were not refundable.

55.     On or about June 30, 2018, ZHAO sent an email to X.W. purporting to be Attorney Richard Herman and utilizing email address richardj.herman@outlook.com. The email

informed X.W. that Herman would review and prepare all the documents over the weekend for a speedy motion to withdrawal the visa application.

56.     X.W. never received his original $125,000 USD investment or his approximately $22,575 USD security deposit back from ZHAO for the cancellation of the visa process.

## COUNT 1
### (Wire Fraud, 18 U.S.C. § 1343)

The United States Attorney charges:

57.     The factual allegations of paragraphs 1 through 56 of this Information are realleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

58.     From on or about December 26, 2016, to on or about June 30, 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant HOWARD H. ZHAO devised and intended to devise a scheme and artifice to defraud X.W. and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by causing X.W. to provide him funds through false misrepresentations about helping him to obtain a United States Visa.

### The Use of Interstate Wire Communications

59.     On or about April 9, 2018, in the Northern District of Ohio and elsewhere, ZHAO, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures and sounds, to wit: ZHAO caused a new visa application to be submitted on behalf of X.W. through X.W.'s EVUS account which transmitted information from the Northern District of Ohio (origination point of ZHAO's IP

address) to the Eastern District of Virginia (location of EVUS servers), in violation of Title 18,

United States Code, Section 1343.

JUSTIN E. HERDMAN
United States Attorney

By: ROBERT KERN, CHIEF
White Collar Crime Unit